THOMAS HILL, by H. H. HILL, his Father and Next Friend, Respondent, v. S. S. KRESGE COMPANY, a Corporation, and ENOCH P. BRAMFORD, Appellants.

Kansas City Court of Appeals. December 1, 1919.

1. **APPEAL AND ERROR: Jurisdiction of Special Judge.** The lack of jurisdiction of the special judge who tried the case, on the ground that there is no affirmative showing in the clerk's entry on the record that the regular judge of the division requested, or failed to request the judge of some division to hold court for him cannot be urged for the first time in the appellate court after the parties have acquiesced to the sitting of the special judge elected as prescribed by statute.

25—Mo. App.

2. **FALSE IMPRISONMENT**: Allegation of Malice: Actual Damages. In an action for false imprisonment, the existence of malice need not be alleged except where punitive damages are sought; an instruction which deals with the actual damages sustained by the plaintiff need not require the proof of malice unless the plaintiff has alleged the existence of malice in connection with his request for actual damages.

3. ———: Punitive Damages: Conflicting Instructions. An instruction for plaintiff which tells the jury that it may ·consider the fact that ˙defendant acted upon reasonable and probable cause in mitigation of punitive damages, conflicts with an instruction given in defendant's behalf that if defendant acted and relied upon reasonable and probable ground the plaintiff could not recover ˌpunitive damages.

4. ———: Excessive Actual Damages. A verdict of $3000 actual damages *held* not excessive where plaintiff was walked through the street, taken to the station in the patrol wagon, and placed in a cell with undesirables where he spent the night.

Appeal from Jackson Circuit Court.—*Hon. A. C. Pop-ham,* Special Judge.

AFFIRMED CONDITIONALLY.

*M. J. Kilroy* and *E. A. Scholer* for respondent.

*Jay Richardson* and *J. M. Johnson* for appellants.

BLAND, J.—This is an action for false imprisonment. The jury returned a verdict against both defendants for $3,000 actual and $2,000 punitive damages. This is a companion case of Vest v. S. S. Kresge Company, 213 S. W. 165. Plaintiff in this case is the same person as the individual, Hill, mentioned in that case. As the facts in this case are substantially the same as those in the Vest case, it is unnecessary to restate them. They will be found set out in full in the Vest case. However, the points raised in this case are somewhat different from those decided in the Vest case.

Defendants' first point is that the special judge who sat in this case had no jurisdiction to try it. The circuit court of Jackson county is composed of several

divisions, sitting at Kansas City and Independence, in such county. This case was pending in Division Eight, over which Judge Daniel E. Bird presided as the regular judge. The case was not tried before him. Instead, it was tried before A. C. Popham, Esq., a member of the Jackson County bar, as special judge. His selection and the cause thereof are set forth in the following record:

"Be it remembered that on this 20th day of May, 1918, the same being the 7th day of the regular May term of the Circuit Court of Jackson County, Missouri, at Kansas City, begun and held at the court house in said city, county and State; the Honorable Daniel E. Bird, judge, regularly presiding over this the Eighth Division of the Circuit Court of Jackson County, Missouri, was called out of the city, and being therefore unable to hold court in this division of said circuit court, the clerk of this court proceeded to hold an election among the members of the bar, being more than five members of the Jackson County Bar present and participated at said election, the Honorable A. C. Popham was elected special judge in accordance with the provisions of the Statutes of the State of Missouri in such cases made and provided."

The record also showed the oath of office was duly administered.

The statute relative to the disqualification of the regular judge and election of a special one in civil cases pending in the circuit courts of the State generally is found in sections 3961 and 3967, Revised Statutes 1909. The latter section requiring that an entry of the election "shall be made on the records of the court, together with the reasons therefor;" including "the fact that the requisite oath has been taken" by such special judge. But an additional statute authorizing an election in the circuit court of Jackson County composed, as we have said, of several divisions, is found in section 5, of the Session Acts of 1913, p. 212. It reads as follows:

"Whenever the judge of any division of said circuit court shall be sick, absent, or, from any cause, is unable to hold any term or part of term of court in such division, or his regular term at Independence, such term, or part of term, may, by request of such judge of such division, be held by a judge of any other division of said circuit court; and if such judge fail to make such request, or if the judge so requested, for any reason, fail to hold such term, or part of term, of court in such division, or his regular term at Independence, then the attorneys of court may, in the manner provided by general law, elect one of their members possessing the necessary qualifications to hold court in such division, or at Independence, for the occasion."

It will be observed that the record recital disclosed that Judge Bird was unable to hold court in his, the Eighth Division, by reason of being out of the city but it contains no affirmative showing that the regular judge requested or failed to request the judge of some other division to hold court for him. There was no objection made to the jurisdiction of the special judge until the case was brought to this court. The circuit court of Jackson County is a court of general jurisdiction and if we cannot indulge the presumption that the request, or failure to request, by Judge Bird of another judge to hold court for him was not present as required by statute (a matter we need not pass upon), there is no question but that special Judge Popham was a *de facto* judge, and there being no objection to his acting in the case and all parties acquiescing, the lack of jurisdiction, if any, cannot be raised now. [State ex rel. v. Seay, 64 Mo. 89; Nickerson v. Leader Mercantile Co., 90 Mo. App. 336; Usher v. Telegraph Co., 122 Mo. App. 98; Aiken v. Sidney Steel Scraper Co., 197 Mo. App. 673; State v. Miller, 111 Mo. 542.]

It is urged that the court erred in the giving of plaintiff's instructions Nos. 1 and 2 on the question of actual damages, for the reason that they permitted a verdict for plaintiff without requiring the jury to find

that defendants acted with malice. Malice need not be proven in an action for false imprisonment when recovery for actual damages only is prayed for, but is necessary to be proved where punitive damages is sought, and must be submitted to the jury in an instruction covering the latter kind of damages. [Wehmeyer v. Mulvihill, 150 Mo. App. 197; Thompson v. Buchholz, 107 Mo. App. 121.] But it is insisted that plaintiff in his petition pleaded malice and having pleaded this element, although it was not necessary, his proof and instructions must follow his petition, and that, therefore, this element should have been submitted in the instructions covering even actual damages. If plaintiff unnecessarily pleaded malice in his petition in connection with his request for actual damages, there is no question but that it would be necessary for him to prove and submit malice in his instructions covering such damages. [Billingsley v. Kline Cloak Co., 196 Mo. App. 534; Murphy v. McAdory 183 Ala. 209.] But we do not think this latter rule is applicable to this case, for the reason that plaintiff in his petition not only asked for actual but for punitive damages and it was necessary for him to allege malice, either express or implied, in order to recover such damages. The allegations in his petition in regard to malice are very awkwardly drawn and repeated a second time in somewhat different language, but considering the petition as a whole, we think that it was the intention of plaintiff to allege malice for the purpose of supporting his prayer for punitive damages. It is customary to allege malice in actions for false imprisonment. The pleader in this case has followed the usual custom. Had he not asked for punitive damages, we think that he would have been required to submit in the instructions complained of the malice alleged. In view of these facts plaintiff has not alleged in his petition any more than he was required to do, and taking his allegations covering malice to be the basis of his prayer for punitive damages and not for his prayer for actual damages, we do not

think that it was necessary for plaintiff to either prove or submit to the jury the question of malice in connection with his claim of actual damages.

We think, however, that plaintiff's instruction No. 3 was erroneous. It contains the same error as plaintiff's instruction No. C in the Vest case. In his brief plaintiff has attempted to have us change our ruling in regard to this matter, but we are convinced that the ruling in the Vest case was clearly right, and we refuse to disturb it. Plaintiff points out that in this case there was an instruction given for defendant which was not in the Vest case; that instruction in this case told the jury that plaintiff could not "recover punitive damages in this case if the defendants relied and acted upon reasonable and probable ground." But plaintiff's instruction No. 3 told the jury that these facts might be considered in mitigating plaintiff's punitive damages. Clearly the two instructions conflict.

Defendants complain of plaintiff's instructions Nos. 4 and 5, which defined "malice in fact" and "malice in law." These instructions only affected the matter of punitive damages and had nothing to do with actual damages.

It is insisted that the verdict for actual damages is excessive. The evidence shows that plaintiff was arrested about 8:00 o'clock in the evening. He was walked through the streets of Kansas City to a drug store on the corner of the block in which defendants' store was located. A police patrol wagon was called and he was taken to the police station therein. When he arrived at the police station he was searched and then turned into a large cell containing about sixteen men, a number of whom were drunk and lying on the floor. Across the hall women were incarcerated and they continued to curse and swear all night and a man in the cell with plaintiff would holler to the women "be quiet." Plaintiff was unable to sleep. There was no bed provided except a small one made of strips of iron. On the following morning he made efforts to communicate with his

relatives and finally succeeded in getting hold of his uncle who bailed him out about 1:30 P. M. of that day.

There was evidence tending to show that plaintiff was greatly humiliated over his arrest and having to spend the night in jail with denizens of the under world of the city. There is also evidence tending to show that he suffered disgrace as a result of his arrest. In cases of this character the amount of damages to be allowed is largely a question for the jury; that body is vested with a large latitude of discretion and their verdict should not be interfered with unless the appellate court can say that it was clearly the result of prejudice, passion or malice. Numerous considerations enter into the question as to what is just compensation in cases of this kind. No definite rule can be laid down. Disgrace is a relative term, what is such to one man is not necessarily so to another. Mental anxiety, humiliation and pain caused by the arrest are all conditions for the jury. We are unable to say that the verdict of the jury in this case for actual damages is such as to evince passion, prejudice or malice. [Carp v. Ins. Co., 203 Mo. 295; Steppuhn v. Chi. G. W. Ry. Co., 204 S. W. 579.]

Plaintiff has indicated that should we find that his instruction covering the question of punitive damages was erroneous, that he would be willing to remit the amount of such damages. Therefore, if plaintiff will within ten days from the rendition of this opinion remit the amount of punitive damages, with the accumulated interest thereon, the judgment will be affirmed, otherwise it will be reversed and the cause remanded. All concur.